WOLFSHEIMER v. FRANKEL et al.

(Supreme Court, Appellate Division, First Department. March 19, 1909.)

1. PRINCIPAL AND AGENT (§ 81*) — COMPENSATION OF AGENT — COMMISSION ON SALES—"SALE."

An order for goods subject to cancellation by the vendee is not a "sale," within a contract entitling the salesman to a commission on sales.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 194–213; Dec. Dig. § 81.*

For other definitions, see Words and Phrases, vol. 7, pp. 6291–6306; vol. 8, p. 7793.]

2. PRINCIPAL AND AGENT (§ 33*) — LANGUAGE OF INSTRUMENT — PARTICULAR WORDS.

Where the contract of a traveling salesman could be terminated on his failure to make sales aggregating a specified amount during the fall and spring seasons, the meaning of the word "season" is to be determined by its meaning in the territory in which the sales are to be made.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 33.*]

3. PRINCIPAL AND AGENT (§ 82*)—COMPENSATION—CONSTRUCTION OF CONTRACT.

The contract of plaintiff as a traveling salesman for defendant provided that plaintiff should receive a certain commission on sales, and that defendant would advance a certain sum per month and all traveling expenses, "all of which is to be charged to his commission account." *Held*, that in the absence of a provision therefor, where plaintiff's commissions did not exceed the amount advanced, defendant could not recover the difference from plaintiff.

[Ed. Note.—For other cases, see Principal and Agent, Dec. Dig. § 82.*]

Appeal from Judgment on Report of Referee.

Action by Mort Wolfsheimer against Joseph Frankel and another. From a judgment for plaintiff on report of a referee, defendants appeal. Reversed, unless plaintiff stipulates to reduce recovery to a certain amount; otherwise, affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, LAUGHLIN, and SCOTT, JJ.

Benjamin N. Cardozo, for appellants.
William F. Unger, for respondent.

INGRAHAM, J. The parties to this action made an agreement, dated the 11th of January, 1907, whereby the defendants employed the plaintiff for a period of two years from February 1st as traveling salesman to cover territory as per list attached thereto. The defendants were to advance the plaintiff $350 per month during the above period and all necessary traveling expenses, "all of which is to be charged to his commission account," and the defendants agreed to pay the plaintiff 7 per cent. on all goods shipped, retained, and paid for by customers solicited by him. It was further agreed that, if Wolfsheimer should "fail to make sales for two seasons, commencing with fall season, 1907, and spring, 1908, aggregating $80,000, said Frankel Bros. shall have the right to terminate this contract."

The plaintiff testified that he went out on the road for the fall season of 1907 on the 18th of March, 1907, stayed on the road 12 or 13 weeks, and that brought him back about the latter part of May, 1907; that when he went out on that trip he was to sell goods for the fall of 1907; that he went out again on the 15th of September, 1907, and returned about the 20th of November, 1907, to sell goods for the spring season of 1908; that he went to Rochester on the 16th or 18th of December, 1907, to see a firm there; that on December 7, 1907, he was called into the defendants' office and saw one of the defendants, when dissatisfaction was expressed, and it was said that the defendants had had a hard season, and the plaintiff said he would look around and see if he could get something else to do; that he would prefer

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

working for the defendants for less money, if the defendants could not see their way clear to keep him, and the defendant said he would see his brother, and see if they could keep the plaintiff; that the other defendant then came in and said, "'Take a job for six months, and we will take you back after things brighten up a little, and said, 'If you look for another position, our reference that we will give you will be the very best in the world, and we are only too sorry to lose you,'" and with that the plaintiff walked out of the office. On the 31st of December the plaintiff asked for his allowance for December, when the defendants offered him a check and asked him to sign a release. The plaintiff refused to sign a release, and the defendants refused to give him the check.

The plaintiff further testified that his total orders for the fall of 1907 were $36,967.38, of which were canceled orders amounting to $5,749.75, leaving the total sales $31,217.63; that the total amount of sales made by the plaintiff in the two seasons, which were retained and paid for by customers, amounted to about $50,000 up to December 31, 1907; that he had received no orders from the firm since December 31, 1907. The plaintiff further testified that he went out on the road twice for the fall season; that his territory comprised from Baltimore to Memphis, Tenn., and back; that his second trip lasted one week, when he went to Baltimore and Washington; that that was in May, 1907; that all the orders received from the various houses that he named were turned over to the defendants—either personally delivered or mailed to them; that one order he reported from the firm of Greenbaum, of Washington, was not the same as the other orders, but was a joke; that he received an order from the firm of Pettit & Co. for 600 suits of clothes. In relation to this order plaintiff testified: That he submitted to them his samples and finally they said:

"Have your samples submitted by your firm, and if they are right you can put an order down for 300 of $7, 200 of $8.50, and 100 of $10. This order is given you conditionally, however. This order is given only on the condition that the samples submitted are all right."

That a clothing order is not an order until the sizes are given. That subsequently samples were sent and returned by Pettit & Co. as not satisfactory. Plaintiff further testified that there were two seasons in the clothing business, spring and fall; that the spring season of 1908 ended about July 1, 1908; that after he returned from his trip he sometimes received duplicate orders from customers; that there was a difference between an order and a sale in the clothing business; that when he gave a customer the sizes and the lot numbers, and if the price is agreeable, he buys the goods; then the salesman puts that down, and that is an order; that he did not know whether it was a sale if the order was canceled; that he knew that he did not get commissions for an order so canceled; that sometimes he got orders signed by the purchasers, and specified six other concerns from whom he received signed orders.

It is clear that an order subject to cancellation and which did not bind the vendee was not a sale under this contract. There must have

been at least a binding contract, under which the vendee was bound to receive and pay for the merchandise sold; and the defendants were entitled to terminate the contract if plaintiff did not in the fall season of 1907 and the spring season of 1908 sell $80,000 of merchandise. The only serious question is whether, under this claim, defendants were entitled to terminate the contract on December 31, 1907. The plaintiff was a salesman employed to sell goods at particular places outside of New York. He made two trips a year to sell goods, for what is called a spring and fall season, and it was sales made on these trips to which the contract evidently related. The fact that retailers in New York were in the habit of buying for the spring season through June has no connection with the meaning of this contract, which related solely to sales made in other places than the home market of the defendants, and the word "season" here is to be interpreted, considering this custom and the plaintiff's territory.

It is quite evident that both parties considered the spring season of 1908 at an end on the 31st of December, 1907, and that the sales for the two seasons were much less than the $80,000 specified in the contract. Plaintiff took no objection to the termination of the contract on this account, and claimed no right to make sales beyond the 1st of January, but simply said his contract had not expired. The sales that he had actually made, which excluded orders that were canceled, amount to less than $50,000, being $30,000 less than the amount named, which would entitle the defendants to terminate the contract. There is not the slightest evidence that would have justified a finding that any efforts that he could have made before he was required to take up the fall business of 1908 could have supplied this deficiency, and in the absence of any demand to be allowed to continue to make sales I think the defendants were entitled to treat the contract as terminated.

The question is then presented as to the defendants' counterclaim. The contract provided that the defendants were to advance plaintiff $350 per month during the above period and all necessary traveling expenses, all of which was to be charged to his commission account. There is no provision that, if his commission account should not exceed the amount of these advances, the plaintiff was to repay them. They were to be advanced commissions, and to be deducted from the commissions actually earned. After the contract had terminated, as it was on December 31, 1907, the plaintiff was not entitled to further advance payment; but the defendants were not entitled to charge against him, or against his advance payments due up to the end of the year, when the contract was actually terminated, the advance payments that had been made under the contract. If the plaintiff's commissions did not exceed the amount of the advance payments while the contract was in force, the defendants were not entitled to recover the difference from the plaintiff. But, clearly, the plaintiff would not be entitled to advance payments for any period after the termination of the contract.

My conclusion, therefore, is that the judgment appealed from should be reversed, and a new trial ordered before another referee, with costs to the appellants to abide the event, unless the plaintiff should stipulate to reduce the recovery to the sum of $350, the payment due for De-

cember, 1907, with interest from December 31, 1907, in which case the judgment, as so reduced, will be affirmed, without costs of this appeal. All concur.