**Harry Srere, Abraham Srere and Alfred Srere, copartners trading as Srere Brothers & Company, Appellee, v. Arthur R. Rapp, Appellant.**

### Gen. No. 28,479.

1. CONTRACTS—*advance of wages when not consideration for repayment note.* Under a contract of employment of defendant as general manager for plaintiff which provided for an advance to defendant of $50 a week in addition to the $100 at first provided for, such $50 weekly to be charged to defendant personally for the balance of the year, or until he found he could get along, or until there were sufficient profits to pay such advances, there was no express or implied promise on defendant's part that he would surely at any time repay such advances and no legal liability to so pay was created and notes given for such advances were without consideration.

2. SET-OFF—*money paid on one note as set-off against other notes.* Where notes given by defendant for advances made under his contract of employment for plaintiff were without consideration and upon the negotiation of one of such notes he paid part of its face value and plaintiff paid the balance, defendant was entitled, in a suit on such notes brought by plaintiff, to recover the sum so paid by way of set-off.

Srere et al. v. Rapp. 233 Ill. App. 190.

Appeal by defendant from the Municipal Court of Chicago; the Hon. WILLIAM R. FETZER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1923. Reversed and judgment here. Opinion filed June 11, 1924. Rehearing denied June 24, 1924.

HOAG & ULLMANN, for appellant.

BRADY, RUTLEDGE & DEVANEY, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

After certain preliminary negotiations, the defendant, sometime in February, 1918, entered the employment of the plaintiff copartnership as general manager of its paper business, in Detroit, Michigan. A number of letters were written by each of the parties to the other in regard to the terms of the defendant's employment. The particular matter involved here is the contract that pertained to the compensation which it was agreed the defendant should receive for his services. It is admitted in the briefs for both sides that the terms of the employment are set forth in the testimony of Srere, a member of the plaintiff copartnership. That testimony is as follows:

"When we first entered into this agreement he was supposed to live in Chicago and spend a couple of weeks in Detroit. He subsequently said that he would rather live in Detroit in order to devote more time to it, that he figured it would be necessary to possibly devote more time, and we had a conversation in which he told me that he could not get along on a hundred dollars a week, and I told him, 'Our agreement is that you draw a hundred dollars a week. Now, if you can't get along we have no objection to permitting you an advance of fifty dollars a week and charging it to you personally for the balance of the year or until you find that you can get along, or until there be profits and that you can withdraw from your profits.' "

The defendant worked for the plaintiff until the

latter part of November, or the 1st of December, 1918. During his employment he had been paid $150 a week, which included the $50.00 a week as an "advance." About two weeks after he quit—which was by mutual agreement—he had a conversation with Srere, the manager, in regard to his account with the plaintiff.

The evidence of the plaintiff is that Srere at that meeting told him he was overdrawn, and that he told Srere that he did not think so; that Srere told him he would like to have a check to cover the defendant's overdraft; that he told Srere he could not give him a check; that if he would send a statement of his account, he would be glad to check it over, and if he owed anything, to pay it; that Srere said the plaintiff needed the money; that he would like to have the defendant give him notes, and if the defendant found, upon Srere giving him a statement that he, the defendant, was not overdrawn, Srere would take up the notes; that, accordingly, he, the defendant, gave Srere for the plaintiff three notes, each dated November 4, 1918, for $500.00, payable, respectively, two, three and four months after date, to the order of the plaintiff; that he did not receive a statement of his account until some months later.

The evidence of Srere for the plaintiff is that he and the defendant had some talk concerning the defendant's account being overdrawn; that he told the defendant that his account was overdrawn about $1,800.00; that after they had discussed the salary for the last week and a charge of $50.00, he, Srere said the plaintiff would give his credit for those two items, and call the balance due the sum of $1650.00; that the defendant said he was not in condition to pay cash, and that he, Srere, told the defendant that they would arrange to take his notes for the $1,650.00; that when the defendant said he did not know whether he would be able to pay the notes, he, the witness, told him to make out three notes, each for $550.00, and

date them two, three and four months apart, and that any time one of those notes became due, the defendant should pay $100.00; that he told the defendant that if he was not able to pay $100.00, as it became due, he should let him, the witness, know a week in advance as to what he could pay, and that he, the witness, would send him a check for the difference, and take the notes up; that the defendant said that that was entirely satisfactory; that the notes were then made out; that when the first note became due, the plaintiff sent him a check for $450, and that the defendant paid $100.00 extra, which two amounts, together, took up that note.

At the trial, six propositions of law were tendered on the defendant's behalf, all of which were refused. The cause was tried, without a jury, and a judgment entered for the plaintiff in the sum of $1,844.68. This appeal is therefrom.

It will be seen, therefore, that the chief question in the case is the determination of what the parties meant by the use of the following language:

"We had a conversation in which he told me that he could not get along on a hundred dollars a week, and I told him, 'Our agreement is that you draw a hundred dollars a week. Now, if you can't get along we have no objection to permitting you an advance of fifty dollars a week and charging it to you personally for the balance of the year or until you find that you can get along, or until there be profits and that you can withdraw from your profits.' "

It is the contention of the plaintiff that the three promissory notes were given by the defendant to repay the plaintiff what it had advanced to him at the rate of $50.00 a week during his employment; "that the additional payments were not advances against profits, and that the profits were not the funds looked to for repayment, but, on the contrary, that they were personal loans and advances to the defendant regardless of whether there might be profits or not." On

the other hand, it is the contention of the defendant that the "additional payments were advances against profits, and that the profits were the only fund looked to for repayment, so that if there were no profits, there would be no obligation on the defendant to repay"; that there were not profits, and therefore there was no evidence on which to base a finding for the plaintiff.

The words used permit an advance of $50.00 a week, which is to be charged to him personally, (1) for the balance of the year, or (2) until he finds that he can get along, or (3) until there be profits and the advances can be withdrawn from his profits. The defendant had three privileges given him. If any one of them presented an obstacle to payment, he would not be liable to repayment. That was the contract, the statement of Srere himself. There were no profits out of which the advances charged to him could be withdrawn, and so the prerequisite to liability was wanting. In *Auerbach v. Ramer,* 141 N. Y. Supp. 848, the words were "which said advances shall be charged to the personal account of the employe, and shall, as hereinbefore provided, be deducted from the earnings of the employe." The court there said, "The rule to be deduced from these and other similar authorities is that where a contract of employment provides for advances to the employe, and which are to be charged to and deducted from the commissions agreed by the employer to be paid to the employe as the same may accrue, the employer cannot, in the absence of either an express or implied agreement or promise to repay any excess of advances over the commissions earned, recover from the employe such excess." The court in that case, also, said, "There are other cases, however, which lay down the rule that advances made in contracts similar to the one in the case at bar are not loans, and cannot be recovered. This principle is laid down in *North Western Mutual Insurance Co.*

*v. Mooney,* 108 N. Y. 118, where the court said, speaking of an advance made pursuant to a contract similar in purpose, that the advance if to be used to promote the business of the person making it, could be considered neither as a gift nor a loan.   There is later judicial recognition and approval of this general doctrine in the case of *Schlesinger v. Burland,* 42 Misc. Rep. 206, 85 N. Y. Supp. 350; also in the case of *Wolfsheimer v. Frankel,* 130 App. Div. 853, 115 N. Y. Supp. 958.''

Certainly, in the instant case, as the advances were to be charged to him personally for the balance of the year, or until he found that he could get along, or until there were sufficient profits to pay them, there was no express or implied promise on his part that he would surely at any time repay the advances of $50.00 a week.   At most, it was a conditional promise, and the evidence shows that the condition was never fulfilled.

In the *Schlesinger* case *supra,* where, the words of the contract provided that the ''advances and traveling expenses'' should ''be charged to and deducted from the commissions of'' the plaintiff ''computed at the end of the period of the employment,'' it was held that ''it was not the intention of the contracting parties when the agreement was made that he should be personally bound for the repayment thereof, except to the extent of his commissions earned.''

The word ''advance'' with an appropriate context may import an unqualified promise to pay back, but, here, the context, simply and clearly, announces certain conditions that must come into being before an obligation to pay back arises; and the evidence shows that they never occurred.

In our judgment the notes were given without consideration; that is, at the time they were given there was no legal liability to repay the advances for which they purported to be given.   They, therefore, when

made, were not evidence of an indebtedness, and nothing, that the evidence shows was done or said about them at the time of their execution or afterwards, changed their nature.

The defendant claims a set-off in the sum of $100.00. On one of the notes when it was negotiated, and paid, the plaintiff paid $450.00, and the defendant $100.00. The defendant said he paid it to save his credit at the bank. The plaintiff got the benefit of that payment, and the defendant is, therefore, entitled to judgment for that amount.

The judgment will be reversed, and judgment in the sum of $100.00 entered here in favor of the defendant and against the plaintiff.

*Reversed and judgment here.*

O'CONNOR, J. and THOMSON. J. concur.